We will hear argument this morning in Case 23-1122, Free Speech Coalition v. Paxton. Mr. Schaffer. Thank you, Mr. Chief Justice, and may it please the Court. In this case, a Fifth Circuit majority held that mere rational basis review, the most lax form of judicial scrutiny, applies to a Texas law that burdens constitutionally protected speech based on its content, specifically by imposing an age verification barrier before anyone can access a sexually themed website. That aberrant holding defies this Court's consistent precedent, including its Ashcroft decision, as Judge Higginbotham well explained in his dissent. This Court should begin by confirming that strict scrutiny continues to apply to any such content-based burden on websites and their adult users. Notably, Texas's law is even more problematic than its failed federal predecessors. It applies to entire websites, depending on whether one-third of their content is deemed inappropriate for minors. It also brands websites with stigmatizing, unscientific so-called health warnings that, despite being enjoined, evidence Texas's intention to deter adults, even assuming they've cleared the age verification hurdle, from accessing protected speech. To abandon strict scrutiny here, Your Honors, could open the door to an emerging wave of regulations that imperil free speech online. From there, this Court can readily restore the preliminary injunction, given petitioners' likelihood of success under strict scrutiny. The District Court found that this law's age verification provisions are wildly under-inclusive and unduly chilly. At the same time, content filtering today affords at least one alternative that is both less restrictive and more efficacious. Ashcroft teaches that a preliminary injunction should stand in precisely these circumstances. That result, Your Honors, does not denigrate government's compelling interest in protecting children. Nor does it prevent Texas from trying to carry its burden between now and final judgment, or from enacting a new and better-tailored law. Rather, reinstating the preliminary injunction would simply maintain fidelity to First Amendment rights and precedents while litigation proceeds. I welcome the Court's questions. Can age verification systems ever be found constitutional? Justice Thomas, I think government should start with content filtering as a less restrictive alternative. But can age verification ever be constitutional? I don't think the Court needs to close the door to that here, but it would need to be tailored age verification of the sort that the amici supporting Texas are advocating, which is different from what Texas's law permits. And what would that look like? I think, Your Honor, what you have from the amici is that there are ways of verifying age short of identifying the individual, short of the transactional data that Texas would require be provided. And so you would have less identification of the individual. You would have privacy protections that are maximally assured by the law. You would have private rights of enforcement that you do not have here. Everything depends upon the Attorney General, who's avowedly hostile to these websites and to their users. And last, Justice Thomas, you should have confidentiality that is legally assured. And the state should be providing assurance that it will not misuse the information that is being collected pursuant to the state mandate. None of those features are present in Texas's approach to age verification. And tellingly, you have nothing in the legislative record, you have nothing from Texas, even in its submissions to this Court, that shows how the specific provisions of HB 1181 have been tailored with sensitivity to the privacy concerns that exist in this context or, for being efficacious and making sure that you have meaningful protections that protect minors across the board. And so, Your Honors, if we start with strict scrutiny... Counsel, can I ask you a question? Is it a barrier? Explain to me why the barrier is different online than in a brick-and-mortar setting. I mean, in a brick-and-mortar setting, I mean, it seems like a lot of your concerns are driven by privacy concerns, which are really a feature of the Internet. I mean, you don't have privacy if you go into the bookstore in Ginsburg or if you go to a movie theater that displays pornographic movies. You have to show age verification. So, explain to me why this is so uniquely burdensome here when it's not been in the real-world context. Let me start with that, Justice Barrett, with your question about why is this medium different. And the answer is you're creating a permanent record on the Internet when you provide this information, that it is being collected, it is a target for hackers, it is something that is different from just flashing an ID in physical space. But I'd also note that you have content filtering, as the Court has recognized, that is the analog in the physical scale of the email. Well, I mean, let's see. In Ashcroft 2, the Court expressed anxiety about the fact that technology moved so fast that the five years between the district court findings in that case and the case being at the Supreme Court, you know, that technology may have moved beyond the record at that point. It's been 20 years since Ashcroft. The iPhone was introduced in 2007 and Ashcroft was decided in 2004. I mean, kids can get online porn through gaming systems, tablets, phones, computers. Let me just say that content filtering for all those different devices, I can say from personal experience, is difficult to keep up with. So, and I think that the explosion of addiction to online porn has shown that content filtering isn't working. Justice Barrett, let's flash forward on the technology. I think it is actually common ground that content filtering today is technologically better than ever, more readily available than ever. It's employed by this Court. It's employed in workplaces throughout America. And it's agreed by the experts for both sides that it can work, specifically in this context, of parents protecting their kid to all the devices that Your Honor just cataloged. You can find that in the Joint— This Court has an IT department, and so do workplaces. But this is content filtering software that's designed to be implemented in the home. And so if you look at Joint Appendix 275-76, 282-285, you can see Mr. Allen testifying for Texas about content filtering today being fit for purpose. It's a question of adoption. And as to that, I think it is telling that Texas has not considered the possibility of educating parents, encouraging parents. There was a proposal as to this law, specifically to say that devices would automatically install content filtering. That would be legally required. They dropped that. Texas dropped that without any explanation whatsoever. You can find that in the Joint Appendix 255-56. Texas decided that they would empower parents and equip parents, and then, without explanation, decided they would skip ahead to this very chilling step. Mr. Schaffer, do you know a lot of parents who are more tech-savvy than their 15-year-old children? Oh, Justice Alito, it's a fair question. And I don't know that—I think kids may be ahead of parents, but that's a problem with this law. It's not solving for the fact that— Well, it's a problem with filtering, isn't it? I don't think it is, Justice Alito, because this is filtering software that is designed to withstand circumvention, including by sophisticated tech people in the workplace and in courthouses. I mean, Mr. Schaffer, come on, be real. There's a huge volume of evidence that filtering doesn't work. We've had many years of experience with it. We now have many, many states who have adopted age verification requirements. You think they just—why are they doing that if the filtering is so good? Respectfully, Justice Alito, they made no efforts to encourage content filtering or to educate about it. And look, Justice Alito, at the health warnings that are in this law. Those are designed to change established— Well, those are not before us. Is your argument that this is unconstitutional because it was motivated by improper bias in the part of the Texas legislature that voted almost unanimously for this law? I would suggest that, to be honest, but I don't think you need to go that far. What I would say is that they wanted to skip ahead to the more chilling efforts to change behavior as opposed to starting with content filtering or even considering it. The point is that content filtering may work to some extent, but it doesn't work to the same extent in achieving the government's interest. At least that's the argument. And the relevant inquiry is not, does content filtering work? Does it achieve the interest to the same degree? As Justice Barrett indicated with Ashcroft, Justice Breyer's opinion in Ashcroft, whether it was right or wrong at that moment, seems correct today or at least prescient today. Justices Kavanaugh, Alito, Barrett, I would encourage you to look at the district court's findings in the petitioner's appendix 112 to 114 about all the gaps in Texas's approach to regulating. Foreign websites are going to be completely undeterred and unchanged. You have VPNs that tech-savvy minors can use to make it seem like they're outside of Texas. You have search engines. You have social media. All of those are designed to be outside the scope of Texas's law. And the only way that kids are actually going to be protected from all those many sources that are the most readily available... Well, that's an under-inclusiveness argument. And I don't think we've said that as a state has to tackle every aspect of the problem or else it can't do anything. All I mean to suggest is that a genuine effort, a serious effort to regulate in this area would look like the federal laws that your honors were considering that said, irrespective of source, there's certain content that is sexually explicit and inappropriate for minors. What do you mean by genuine and serious? You don't think they're genuine in their interest? I think that they're genuine in their interest, Justice Kavanaugh. But I think that their interest is a broader anti-porn interest in preventing willing adults from accessing this content. And they want to make it more difficult. They want to make it costlier. They want to make it chilling. And so, Justice Kavanaugh, what I would say is, crediting the court's concerns and the concerns of a responsible government that wants to regulate here, I think you should wait for a government that actually shows they're making serious headway to tackle the problem. Could I take you back to Justice Barrett's initial question? This was about brick and mortar stores. And if there's an age verification requirement about, like, porn magazines, is that also subject to strict scrutiny? Would that, are you saying that that should be analyzed the same way? I'd need to see the law, Justice Kagan. I would. I think if it's an age... No, I don't think you need to see the law. It's just, I mean, it's just this. It's an age verification requirement, but it applies to brick and mortar stores. And it relates to the distribution of, you know, printed smut. Here's all I mean, Justice Kagan. If that law was to say age verification takes the form of an affidavit or show your birth certificate, I think that that would absolutely, of course, be subject to strict scrutiny. Well, it's an age verification law that requires the same kind of documentary proof or whatever that this law does. I think it's going beyond the New York law that was addressed in Ginsburg, as I understand Your Honor's question. I think it would be subject to strict scrutiny. It would almost surely satisfy that scrutiny, unless it was gratuitously designed to chill the adult customer from making the purchase. And why is it that that law would satisfy strict scrutiny, but this law does not? Because it's tough to imagine, Justice Kagan, how else you would be getting after the point of purchase exchange to a minor, short of what Your Honor's describing, assuming that this is the kind of traditional sort of law. I do note we agree with the institution. So if that's the case, your answer to that really depends entirely on content blocking, the availability of content blocking in the online space. I don't think entirely, Justice Kagan, because if you go to a store and the clerk is just looking at an ID, there's not a special cost associated with that. When you have age verification for every single user in the internet context, and you're multiplying those costs, $40,000 per 100,000 users as found by the district court at a minimum, you have a serious burden on the speaker. And we agree with the Institute for Justice and Intimica's brief that when you have a law that reads as this law does, saying if you are sponsoring sexually explicit content online, you must answer to an across-the-board age verification mandate. That, Your Honors, is content-based discrimination. That is a content-based burden. That should always trigger strict scrutiny. Well, the court and I—I'm sorry. I just want to pin you down a little bit if I can—I'm going to try. Do you agree that at least in theory, brick-and-mortar institutions shouldn't be treated differently than online and vice versa? That principle that we shouldn't have a constitutional regime that prefers technology—one technology over another? We've said as much in Wayfair. Justice Gorsuch— Do you agree with that principle? I think it's a different medium, so I don't want to be difficult with Your Honors' question. I do agree—oh, sorry. I'm going to press you. All right? I understand they're different media, but does the principle apply that we should try and treat those two media as equally as possible? Yes. Okay. Okay. I'll take it. I'll take it. Okay. I'll stop there. Yeah. Good idea. Okay. What percentage of your clients' materials would be considered obscene for minors? Your Honors, it's tough to arrive at that calculation. Your friends on the other side say it's all. I don't think—no, that is not true, Your Honors. Virtually all? No, Your Honors. Okay, then you give me the number. What percentage? I cannot quantify it because we're dealing with—I would recognize a very large universe of material. I would note, Your Honor, that among that material is blogs. It is podcasts. I understand. I'm asking you for a percentage. Your Honor, I cannot quantify that. More than 50 percent? I think that's a fair—that's a fair guess. More than 70 percent? Your Honors, I don't want to go out on a limb. I think that may be correct, but I can't tell you with assurance. More than 90 percent? There, Your Honor, I think we may be stretching upwards. Okay. As far as whether it's sexually explicit. We've got 70 percent, though. Okay. All right. And then do you agree that there is a compelling government interest in keeping obscene materials from minors? Yes, unequivocally. Okay. Thank you. Well, why don't you— Can we— To follow up on Justice Gorsuch's questions, why don't you talk about the most popular porn sites, which I gather you're representing. So one of the parties here is the owner of Pornhub, right? Yes. And what percentage of the material on that is not obscene as to children? Well, Your Honors, if we're talking about the youngest minors, I would agree that most of it is, and that is how we read the law. Is it like the old Playboy magazine? You have essays there by the modern-day equivalent of Gore Vidal and William F. Buckley, Jr.? Not in that sense, but in the sense you have sexual wellness posts about women recovering from hysterectomies and how they can enjoy sex. That's on there. Discussions of age verification proposals and where the industry lines up as far as what they think should be legislated and what should not. All right. Let's go down to what's the second most popular porn site. I don't have the exact— We don't know you represent these people. We represent the industry, Your Honor. The portion of the industry that answers to U.S. laws and jurisdictions. Are you familiar with what they have? Your Honor, somewhat so, yes. And I think the record offers some indications of that. But I'd also note that some of it is softcore by any account. It's people who are wearing less rather than more clothing we would recognize, but not anything that anyone would think to be obscene as to adults. And potentially for a 17-year-old, that would be up to a parent to decide what's appropriate for their minor. I mean, the district court was worried that this would have an effect on something like Netflix, right? Yes. I mean, is Netflix a party here? No, they're not. Is there any business other than hardcore porn, a party here, concerned about the application of this law to them? Yes, Your Honor. I'm sorry, an amicus here? Well, Your Honor, you have the American Booksellers Association. You have O-Schools, which is devoted to sex education. You don't have Netflix. You don't have anybody else like that who is concerned that this would apply. And even in terms of the client base, Justice Alito, I want to be precise. One of the client websites is solely softcore. It's not anything that you would, I think, would answer to the description you were suggesting earlier. And they are absolutely going to be brought within this legal framework. Counsel, can we get to the question presented? The question presented is not whether this law passes, is constitutional. The question is what level of scrutiny, correct? Correct. And so the issue that Justice Gorsuch asked you was what type of scrutiny should we apply when content can be obscene as to children, but not obscene as to adults, correct? Correct. And we have at least five precedents that have answered that question directly. Yes. In Sable, some of the material was obscene to children, even if it wasn't obscene as to adults. Because with respect to children, we have said that even indecent materials can be regulated under rational basis, correct?  And in Sable, the law applied to adults, and we said you had to apply strict scrutiny. Correct. And it was invalid under it. So the answer to Justice Gorsuch is let's treat every medium under the scrutiny that applies to the people affected, correct? Yes, Justice Sotomayor. So that's strict scrutiny. That is strict scrutiny. For us to apply anything else would be overturning at least five precedents. That's my count as well. All right. Now, let's move from there, okay? Assuming all of the questions that have been asked of you, whether because this medium is different, more ubiquitous, whether because the effect on children might be greater today than it was back when, that would go to whether strict scrutiny is met, isn't that true? That is exactly right. And so if content filtering is no longer as effective as we thought in Ashcroft, and I spot my colleagues that that's likely true, that would go to whether this law meets strict scrutiny because age verification is more effective, correct? Yes. All right. Now, having said all of that, there has been a suggestion by the other side that instead of strict scrutiny, we should apply intermediate scrutiny. Assuming we applied a different level of scrutiny, I don't know why, because the only two times that we've applied intermediate scrutiny, one was Renton, where they were dealing with the effects unrelated to speech, correct? Correct. Secondary effects. Secondary effects, traffic jams, noise, et cetera. But the one case that might give me pause is Pacifica, all right? And Pacifica had to do with the radio. And we applied a different level of scrutiny because of that. But it wasn't rational basis like this court did, correct? Correct. So it was at best intermediate scrutiny? Yes. Why is this different than Pacifica? Two reasons I'll offer, Justice Sotomayor. Number one, broadcast is uniquely regulated as a medium of expression as the court has recognized, and public broadcasting in particular. The internet is the opposite of that. Through all the precedents, Your Honor, went through Reno and Ashcroft and the way that the internet has developed. The second reason, the court emphasized just how much radio permeates the entire house. If the radio was on, you may just hear something. So there's no analog for content filtering, and you don't have a user through the screen who is specifically collecting certain content. And I would just note, Justice Sotomayor, in Pacifica, it was even-handed across-the-board regulation of the content deemed inappropriate for kids. Here you have what Justice Kavanaugh and I were discussing in terms of under-inclusiveness. I would say it is so conspicuous, so inexplicable, it is speaker-based discrimination that is another reason, in our view, why strict scrutiny would apply here, even more so than the cases we were just going through. Sorry, Mr. Chief. No, thank you very much, counsel. Sable, of course, was 35 years ago. In that period, the technological access to pornography obviously has exploded, right? I mean, it's very difficult for 15-year-olds, whatever, to get access to the type of things that is available with the push of a button today. And the nature of the pornography, I think, has also changed in those 35 years. And so, are those the sort of developments that suggest revisiting the standard of scrutiny is something that we should at least consider, as opposed to keeping a structure that was accepted and established in an entirely different era? I'd respectfully urge you not to, Mr. Chief Justice, and for the same reasons that Your Honors did in the Holder case, in the UE case, in opinions that you wrote, Mr. Chief Justice. The extent of the interest does not change the standard of scrutiny. It simply goes to whether the applicable scrutiny is satisfied. And we are here conceding explicitly that there is a compelling interest that is at work in this area. We encourage state efforts to regulate in a way that is properly tailored, is respectful of adults' rights, and is really going to help protect kids. And so that, Your Honors, is exactly where strict scrutiny does its work. And I think for the reasons that we were discussing with Justice Sotomayor, it is as well-warranted here as in the entire string of cases where Your Honors have continuously applied strict scrutiny, even if there were new problems, new technologies that government was trying to tackle. Thank you, Counsel. Justice Thomas? Justice Alito? Justice Sotomayor mentioned some of the precedents that have been cited by the parties in this case. She didn't mention Ginsburg versus New York, which was perhaps the decision that the Court of Appeals relied on most heavily. So I would like you to explain why rational basis was appropriate in Ginsburg and not appropriate here. What you say in your brief is, the law at issue in Ginsburg did not place any restriction on adults' access to sexual materials. It did not, for example, require sellers to conduct age verification of adult customers. How can that be true? Suppose a youngish-looking person went into Mr. Ginsburg's store and wanted to buy a girly magazine. Mr. Ginsburg faced the possibility of criminal prosecution if he did not verify that that person was not a minor. So why is there not age verification built into the issue in Ginsburg? Justice Alito, if it's built in, it's tailored age verification, just as you were suggesting with the question. Most purchasers, if I myself were the purchaser, I don't think I would be carded. The New York law said that if there was a knowing sale to a minor or someone whom the seller should suspect to be a minor, that would be an exceptional instance where you might have, subject to the seller's discretion, some reasonable effort to ascertain the age. Well, if what you're facing is possible criminal liability, you may want to err on the side of safety. I know that when I try to buy wine at a supermarket, they require me to show an ID. I take it, I'm flattered by it. I've had the same experience. But Justice Alito, I don't think the senior citizen under the New York law would be as likely to be asked to produce verification of age, and it certainly wasn't an across-the-board age verification mandate that has costs and burdens on children. Counsel, I think we're off on a tangent. I'm sorry. Let me move on to something else. So you agree that the state has a compelling interest, but you say they have other ways, less burdensome ways, of serving that interest, and I just want you to go through those. So one is filtering. We've talked about filtering. Another that you referred to in passing was putting some kind of a blocking device on every device. Do you want this built into every smartphone? Is that the idea? So it's available. Yes, Justice Alito. Right there at the click of a button. But why is that less burdensome? First of all, it's not burdening speech. It's the conduct of producing the device that's subject to the regulation. You also don't have someone, when they're accessing extremely sensitive content online, merely by virtue of that, going through a separate transaction where they're identifying themselves in a way that is specific to that content, the most sensitive, private, compromising content. You don't want, your clients don't want to pay for it. You want to put the cost on Apple and Google, right? That's what's involved. I'd also note it's not a tax on the speaker, which has been a traditional paradigmatic concern of the First Amendment. Here it is the speaker of the particular expression who, by virtue of that content, is subject to the tax. And what other ways of furthering this interest do you think the state should have adopted? Two more. You could have blocking at the internet service provider level, subject to the election of the adult who's in charge of the account, so that you could have it cut off at the source so it doesn't flow into the household unless the adult has authorized it. And the other, as I was discussing with Justice Thomas, if the state is to pursue age verification and the court is to suggest that that is open to the state, notwithstanding the availability of these other alternatives, let them do that in a way that is well considered and tailored so that the age verification process is no more burdensome than it needs to be. You have guarantees about what that age verification looks like. You have privacy protections, you have confidentiality, you have enforcement mechanisms that are available to the aggrieved private party. This law, HB 1181, does not answer to any of that. There are services that provide age verification for lots of... and they are used for lots of purposes, for online gambling, for purchasing tobacco products, and they have very tough privacy limitations built into them. Isn't it open to your clients to use those? Actually, it's not, Justice Alito, because if you look at Petitioner's Appendix 171, you can see the provisions of the law that govern age verification. It has to be one of three things. Either a digital ID, which everyone agrees is not available in Texas, so that's the number one alternative is not there to be used. The second is a government-issued ID, which everyone agrees is exceptionally chilling, perhaps the most chilling way to identify yourself to a hostile government. And the third is dependent upon commercially reasonable methods that rely upon transactional data, Justice Alito. So that's things like your mortgage application, your debt... You could not use YODI, for example. Your clients could not use that. We don't think so, Justice Alito. By all indications, that is ruled out, and I do think that that's telling. You have YODI's amicus brief, but they don't pretend to marry up their proposed forms of age verification with what Texas has prescribed and, by implication, proscribed as an available form of age verification. Is that something that's been addressed by the Texas courts or by the Texas AG, whether using a service like that would satisfy the requirements of the statute? I think the plain text tells us you can't. Texas didn't suggest a narrowing construction below, and, of course, this was a pre-enforcement challenge that resulted in a preliminary injunction. So there just isn't an opportunity there to have the narrowing construction. One other point, if I may, Justice Alito, there have been hacks of age verification providers. That is a real thing. Despite all of their assurances and YODI, as you'll see in amicus briefs in support of us... There have been hacks of everything. Yes. Yes. And that is exactly why age verification has an inherent shield to it. Everyone knows what Your Honor just said. Justice Sotomayor? Ginsburg. And that's what the court below relied upon. Ginsburg was a child objecting, not a store. Exactly right, Justice Sotomayor. And it was a child saying, I shouldn't be barred from viewing indecent materials because adults shouldn't, correct? That's correct. And so the only rule there was what level of scrutiny do you apply to a law that applies only to children, correct? That is exactly right. And what the court said is what's indecent for an adult could be obscene, basically, for a child. And obscene materials only have to, for children, obscene or indecent materials, only have to satisfy rational basis. That's right. And I would just note that Justice Brennan's opinion for the court was exceptionally clear about what you were just going through, Justice Sotomayor, what was and was not being addressed. So in terms of Ginsburg being a precedent, it's not a precedent involving a burden on  Yes. And our challenge is solely on behalf of adults. We are not invoking the rights of minors for purposes of our challenge. Sable was a case in which there was a burden on children and a burden on adults. The court applied rational basis to the burden on children and explicitly applied strict scrutiny to the burden on adults, correct? Yes. So we have direct precedent that says you will apply different scrutiny to each age category. That's right. And I would just note that in Reno, Justice O'Connor's separate opinion there differentiated, just as Your Honor is suggesting, between the rights of minors versus the rights of adults, which were separately addressed in that opinion too. Thank you. Justice Kagan? No. Justice Gorsuch? I had thought Ginsburg was a conviction of an adult who sold to minors, and it wasn't a minor asserting any rights. He was charged and convicted of a crime of knowingly selling to minors, right? Forgive me for agreeing with both you and Justice Sotomayor. The challenge— Well, only one of us can be right. Well, here's how I square the circle. It was a challenge by the seller invoking the rights of minors. So that was what— He was invoking his right to sell to minors. Justice Gorsuch? He was convicted of a crime for knowingly selling to minors, counsel. As Your Honor knows, in the First Amendment context, the availability of the overbreadth challenge can invoke the rights of others, and that's exactly what I understood, per Justice Brennan, the challenge you're there to have done, invoking the rights of the minor. Okay. Do you agree he was challenging his criminal conviction for knowingly selling? I'm not going to disagree with the procedural, Your Honor, just the substance. And your distinction of Ginsburg is there, he didn't have to check every ID, is that your distinction? Correct. Liability arose from a knowing sale. So you think that a law that would require brick-and-mortar stores to check all IDs would be impermissible? I think it would be subject to strict scrutiny, potentially, if the adult shows the sorts of burdens that we have here, then I think— And you would argue that undoubtedly that it chills, and therefore it's a problem, right? Justice Gorsuch, my arguments would not be anywhere near as strong. I don't envision any such challenge, and I don't know of any such challenge being brought. I'm not suggesting the Court should write its opinion here in a way that invites those  And with respect to age verification online, which you treat as a different kettle of fish, gambling, age IDs required by a lot of states— If it's not involving expression, protected expression, I'm not bringing the First Amendment challenge. Applying to get a gun, Second Amendment, got to do that online? Different standard. We're not concerned with children the same way. We don't have all the precedents that call for strict scrutiny when you have burdens on adults and the concerns that are operative. The vote in some states, you have to show an ID, a government-issued ID? We're not suggesting that's an issue. All those are okay, but this is different. Your Honor, it is different, and I think part of it's because of the Internet, part of it's because of the law, and part of it's because we're talking about a content-based burden on the speakers. And then we do have an amicus from the age verification providers saying that this can be done now online, anticipating and talking about Justice O'Connor's very thoughtful concurrence in Reno saying this technology is going to change, and they say it indeed has changed. And you point out that we don't have much of a record, given that this is on a PI. What do we do about that? I think it was incumbent upon the Texas legislature to make a record and show that it was consistent. Or is it incumbent upon the challenger to the law, especially in a facial challenge, to make the record? I think under strict scrutiny, it's Texas that bears the burden. It is a content-based burden on expression. You have the instruction of this court that was clear as can be in Ashcroft and no consideration by the Texas legislature about content filtering. So I think that gives us likelihood of success out of the gate. But I would also note, Justice Gorsuch, as found by the district court, we showed that age verification, as implemented by HB 1181, will chill and will be invading privacy. One last point. This is a one-third trigger. And what Your Honor is positing is a more targeted law, a more tailored law, that says here's a particular concern and we're regulating according to that. And then what do you do about our statement in Moody that those who bring facial challenges have an especially hard row, not road, row to hoe? Yes. We think we've done what Moody's would require any First Amendment challenger to do. We've shown that the heartland applications are unconstitutional, particularly when it comes to lack of tailoring. As you expand beyond these particular challengers who are the avowed targets of the law, the analysis only gets worse for Texas. We don't read Moody's to have transformed First Amendment jurisprudence so that you can never bring a First Amendment challenge when you're dealing with certain unknowns in a wide array of speech-making regulations. Justice Kavanaugh? On Justice Sotomayor's questions about what's before us, is it just whether we apply heightened scrutiny, do we go on to apply heightened scrutiny? You in your opening asked us to restore the preliminary injunction. In order to restore the preliminary injunction, as you are asking, we have to make an assessment of likelihood of success on how the standard is applied, not just what the standard is. Correct? Correct, Justice Kavanaugh. I'm respectfully making that ask of the court, but we recognize you could stop shortly. Okay. And do you dispute the problem that Texas is targeting of children's access to pornography? We don't dispute the underlying problem. We support efforts to solve the problem as long as they're properly tailored. You dispute the societal problems that are created both short-term and long-term from the rampant access to pornography for children. Justice Kavanaugh, that is a complicated question that I don't know that I can speak to definitively. I would say this. I think that there is a discussion, a robust discussion, and a healthy discussion about whether all sorts of things involving screens and the Internet and social media and interactions over the Internet, whether those are unhealthy for children. And we understand that this is part of that discussion. I just don't think it's confined, as Your Honor was suggesting with the question, to pornography. And then, thinking back to Ashcroft 20 years ago versus now, age verification technology has become cheaper, more effective in preventing circumvention, at least that's what is represented to us. Do you dispute that? I think that the technology has evolved. We don't dispute that. I think the forms of age verification that are built into the law are absolutely susceptible to cheating because you can get the supposed proof of age. The question was whether it's improved since the time of Ashcroft. I think it has improved, Justice Kavanaugh. I don't know that it's fit for purpose, but it has improved. And then, European countries, France and others, are requiring age verification for this kind of thing. Your Honor, they have explored it. I would note that the U.K. has actually suspended age verification pending technological developments. And they do not, to the extent that they require age verification, the way that they're doing it looks fundamentally different from Texas because, as Your Honor knows, Europe builds in all sorts of ferocious privacy protections and penalties if there are violations of it. That's a fair point there. On the change in technologies, how do we evaluate the ubiquitous nature of smartphones that did not exist at the time of Ashcroft? I think it tells you that this law is not going to accomplish its aims because the smartphone can access the foreign websites. You can use VPNs at the click of a button to make it seem like you're not in Texas. You can go through the search engines. You can go through social media. You can access the same content in the ways that kids are likeliest to do. And HB 1181, by its design, does nothing, I do mean nothing, to address that. And again, I'm asking those questions because you are asking us to restore the preliminary injunction and therefore we need to have some sense of those questions. I appreciate the question. And last, on stare decisis, because that's been raised appropriately, how do we think about stare decisis with a case like Ashcroft as to its evaluation of the facts on the ground as opposed to its legal standard articulation? I think Ashcroft was exactly on point because it was predictive. It was not the court saying definitively that here is the way of the world for all time. And in a way... Do you think it's permissible for the court to say, you know, looking at it now with the technology as it's evolved, with the smartphones, with the experience of the problems caused by children's access to pornography, that we now essentially agree with Justice Breyer's evaluation of how to apply the standard? Respectfully, no, Justice Kavanaugh. Why is that? Because of the posture we're in. We're here on a preliminary injunction. By likelihood that we would agree with Justice Breyer. Well, but Justice Kavanaugh, I think the district court has work to do as reflected in its undisturbed, unchallenged, well-substantiated findings about what the record says about these questions  But you agreed to restore a preliminary injunction by this court, we would have to find that you have a likelihood of success on how whatever level of scrutiny is applied, correct? I have a friendly amendment to that. You would find that the district court did not abuse its discretion by so concluding preliminarily in predicting likely success based upon a preliminary record. That's exactly what Ashcroft addressed. That's exactly what Your Honors have before you in this. Okay. Thank you very much. Justice Breyer? Question about the level of scrutiny. So this law is a little bit, well, there are significant differences between the way this law works and the way the law worked in Ashcroft too. And we all agree, and I understood you to concede earlier, that a minor, that only rational basis would apply if a minor brought a First Amendment challenge to this law because the law very specifically tracks only the category of speech that minors have no right, that's obscene for minors, so that minors have no right to access, right? I do agree with that. I would just note, Justice Barrett, that here we don't know the age of a minor in question, so I could, I don't want to prejudice the right of a 17-year-old to say I'm being limited to the rights of a 3-year-old, but we're not here asserting any such theory. Point taken. What I'm getting at here is, and just in thinking about whether strict scrutiny is the right standard, the law draws a line between speech that's entirely unprotected as to one class and speech that is protected. But it doesn't try to infringe upon the ability of adults to get it. I understand it burdens it with the age verification, but it doesn't prohibit it. The law in Ashcroft 2 was content discrimination on its face because it actually made it illegal to post it, right, absent the age verification defense. Subject to the affirmative defense. Right, right, right. Yeah, I agree, and I'm just exploring this with you. So this law works a little bit differently because the content-based line that it draws, I mean, it's not altogether taking this content off the table, right? You can still display it, Pornhub can still have its videos up, but there's the age verification requirement is the burden. I guess I'm wondering if there's an argument for it not being strict scrutiny, not being rational basis, but maybe we should be thinking of this as the age verification requirement that burdens the adult's right to access the material, but in a way that's not trying to discriminate on the basis of content. I know you have to see the content in order to decide where the age verification requirement applies, but, you know, city of Austin says not every check of the billboard triggers content, triggers strict scrutiny. Excuse me, what do you have to say to that? Two points, if I may. The first is what your honor is positing is dependent upon the premise that they're not putting anyone out of business and preventing them from showing their content. The record says otherwise. I mean, the cost of age verification are such that some speakers cannot continue to speak here. And the second, Justice Barrett, I do agree with Justice Sotomayor's questions that in Playboy, in Sable, the court was dealing with restrictions that were not total bans, especially in Playboy. It was just an effort to essentially say we're going to channel this expression for adults. It's still available for adults. It's just in a way that shields minors from it. That's exactly where the court said that the burden in that case was analyzed no differently from the ban, at least for purposes of the applicable standard of scrutiny.  Thanks. Justice Jackson? And in addition to those cases, don't you also have Reno? I mean, I guess I don't understand how Justice Barrett's hypothesized standard would be consistent with what we said in Reno, where we said in order to deny minors access to potentially unfair, effectively suppresses a large amount of speech that adults have a constitutional right to receive, and therefore it received strict scrutiny, right? That's right, Justice Jackson. The other thing I was pretty surprised about was your concession to Justice Kavanaugh that we have to be evaluating the likelihood of success. I don't really understand that in this circumstance. I thought we had a district court that issued a preliminary injunction and a court of appeals that you say erroneously stated. I don't know why if we determine that the court of appeals applied the wrong standard and vacate its ruling, the district court's injunction doesn't just come back into effect. You're not asking us to issue a PI, is that right? That's right, Justice Jackson. I'm sorry. So we're in a situation where we really don't have to be reaching the merits of success. What we're doing, as Justice Sotomayor suggested, is evaluating whether the court of appeals was correct when it said that this was supposed to be evaluated under the rational basis standard as opposed to strict scrutiny, right?  All I meant to suggest to Justice Kavanaugh that I think more guidance rather than less from the court and its opinion as to why ostensibly the district court did not abuse its discretion would be helpful here. But it may not be if they disagree with you. I mean, this is my other question. You differ from the government insofar as the government says just decide that the wrong level of scrutiny was applied here and send it back to the Fifth Circuit to apply it. You say, no, we should be applying the standard for strict scrutiny. And I think that is what is opening the door to all the questions that you're getting about whether or not this is actually narrowly tailored, whether or not the content filtering software is working. It's because it seems to me that you've asked us to apply strict scrutiny in a circumstance in which it would have been easy, as the government suggests, to just say wrong standard Fifth Circuit and send it back. I never want to be disagreeing with the United States unless I must. So we don't have much disagreement with them on this, Justice Jackson. I would just note that we're talking about undisturbed, unchallenged findings by the district court and a determination that follows, in our view, inexorably from this court's  Given that there has been the detour taken by the lower court, I think it would be helpful. I think it would be reaffirming a First Amendment. And the Fifth Circuit can decide on remand whether or not the district court's findings actually sustain this under the proper standard, correct? It can, Justice Jackson. Finally, with respect to Ginsburg and whether or not the Fifth Circuit was correct to look at Ginsburg as the precedent that tells us what standard is supposed to apply, in your colloquy with Justice Gorsuch, you did, and you admitted that we're talking about a person who was convicted and he himself was an adult. But I understood the court to have told us what the issue is. Well, first of all, the court, in the opinion, says that his, meaning the person's contention, is the broad proposition that the scope of the constitutional freedom of expression secured to a citizen to read or see material concerned with sex cannot be made to depend on whether the citizen is an adult or a minor. So he was saying this is unconstitutional because it varies between adult and minor. And then the court says it's enough for the purposes of this case that we inquire whether it was constitutionally impermissible for New York to accord minors under 17 a more restricted right than that assured to adults to judge and determine for themselves what sex material they read. So really this was a rights of minors case where the person appeared to be arguing that you can't have this law because it burdens the rights of minors. So is that the situation that we have here today in this case? This is a fundamentally different challenge and I disagree with you. I agree with you, Your Honor, that the court was exceptionally clear in Ginsburg about adjudicating only the rights of minors in the face of a challenge that it understood to be confined to the rights of minors. And here we have a challenge in which the person is saying, fine, whatever you do with minors, what we're suggesting is that requiring adults to do something, to do this thing, to access this material burdens our First Amendment rights. So that's a different issue, is it not? Exactly right. Adults and speakers. Also the websites that sponsor this content, all of which have to answer to the age verification mandate at great cost. Thank you. Thank you, counsel. Mr. Fletcher. Thank you, Mr. Chief Justice, and may it please the court. We agree with petitioners that the Fifth Circuit was wrong to apply only rational basis review because Texas's law imposes a content-based burden on speech that is protected for adults. Our office acknowledges that strict scrutiny applied to a similar federal law in Ashcroft's 2, this court agreed, and we haven't identified a basis for applying a different standard here. Critically, though, that should not prevent Congress or the states from restricting the distribution of pornography to children online, just as states have traditionally done it in brick-and-mortar stores and theaters. In remanding for the application of strict scrutiny, we'd urge the court to emphasize three points. First, the government has a compelling interest in protecting children from harmful sexual material online. Second, a law serving that interest is valid as long as it does not burden adult access more than necessary to exclude children. And third, Ashcroft 2's preliminary application of strict scrutiny 20 years ago does not prevent courts from upholding age verification requirements today, now that verification has become less burdensome and experience has shown that other approaches are not working. I welcome the court's questions. In the laws that you, that the Justice Department was arguing in favor of in Playboy and Ashcroft, in either of those, did you ever suggest or argue that there should be a lower standard? We did in every one of those cases before Ashcroft. In Sable, which was the first one of them, we argued for something like intermediate scrutiny under Pacifica. In Reno, which was the next one, we again invoked Pacifica and also made a Renton argument, very similar to the secondary effects argument that my friends from Texas make here. And then in Playboy, we again invoked an argument based upon Pacifica and Justice Breyer in dissent made an argument based on Renton. So we made a pitch for intermediate scrutiny repeatedly in this context. We were robust. And I think that's the history that led us to concede in Ashcroft to that this was a content-based restriction that demanded strict scrutiny. So do you think that it's appropriate in this context of protecting children to compromise the strict scrutiny standard? I wouldn't describe it as compromising the strict scrutiny standard at all, Justice Thomas, but I do think it would be appropriate for the court to emphasize that it's going to be easier for states to satisfy strict scrutiny in this context because of the very unique nature of the interest here. Normally, the government does not have a legitimate, much less a compelling interest in restricting speech based on its content. That's a fundamental principle. Here though, there's a specific category of speech defined by its content, speech that is obscene as to the minors, where everyone agrees that the state not only has a legitimate interest but a compelling interest in making sure that minors do not access that speech that is defined by its content. So I think it's going to be much easier for states to show that restrictions that are based on that content are narrowly tailored to a compelling interest. Well, will it be easy enough for this law to pass? I don't know about this law. We haven't taken a position on that. I know, but I mean, you've been staring at this law for a long time. And this law is pretty similar to 20 other laws that are out there. So you must have some sense, even if you don't want to say particularly this law. There are 20 laws out there. Are some of them going to pass through the eye of the needle here or not? So let me say, if the question were framed the way Justice Thomas did, is there some version of age verification that is good enough? My answer is yes. I'm not really talking about some imaginable version. I'm talking about, like, some version that states have enacted. So let me give you a specific example. We defended COPA, the law this court looked at in Ashcroft II, even after remand in the district court in the Third Circuit and in a cert petition in this court. I have no reason to think that we would come to any other conclusion about a law that looked like that today. The reason I'm hesitating about state laws is that I don't know that there's actually that much variation in the state laws, and all of them raise some questions that we have about Texas's law that we think are questions of what the law means that would inform the First Amendment analysis. So one is this one-third requirement. I think petitioners say the law requires age-gating of an entire website, even if it has a substantial amount of content that's protected. My friends from Texas say in the red brief that if you segregate out the obscene as content behind an age gate, you don't have to age-gate the rest of the content of the website. That seems highly relevant to us. The second one is the issue that my friend alluded to earlier about which methods of age verification are allowed. The amicus briefs in Texas highlight some of these newer biometric methods that seem significantly less restrictive, but there's a question, as the colloquy earlier illustrated, whether Texas law would allow those methods or would instead require some sort of physical identification or transaction records of some kind. And then the last one, which has also already come up, is which minors are we talking about when we say obscene as to minors? I take it that the plaintiffs say that means obscene even as to the youngest minors. When we were defending a similar law in COPA in Ashcroft II, we took the position that obscene as to minors means obscene as to all minors, as in inappropriate and lacking in value even as to older minors. I think the law becomes much easier to defend if Texas courts would adopt the same interpretation of the Texas law here. If I could add one thought, I think that this Court has said in a series of recent First Amendment cases that tradition can be a very important guidepost in deciding both what standard of review applies and also in thinking about how to apply that standard in particular circumstances. I think here the tradition that applies in brick and mortar contexts that's reflected in Ginsburg, to be sure, but also in a much broader family of laws that restrict the distribution of this material, as Justice O'Connor explained and puts notes one and two of her opinion in Reno, adult theaters, adult bookstores, books and magazines, there's a long tradition of restricting this material through age verification methods that are less formal because, as Justice Alito indicated, it's just a requirement to don't sell to minors and that means that a clerk in the physical world can do it by looking at the person and only requiring ID if the person isn't obviously of age. But there's a long tradition of imposing age restrictions on the distribution of this material. So I think that supports the idea that- So you do take Ginsburg to be more than we're just dealing with the rights of minors. It does also impact how we think about the burden placed on people, adults, to ensure that minors don't have access. It speaks to that, as do our traditions with respect to adult theaters and many other things. I agree with that wholeheartedly as to the tradition that's reflected in the law that was issued in Ginsburg. I think I read Ginsburg the same way that Justice Jackson does. No, I understand that. But it's a necessary implication of the decision. Right. No one thought that that law was invalid. Right. I think everybody understood. It's a content-based law. But everyone understands that the burden on adults is okay because requiring ID is the least restrictive way of keeping the material away from children. And in Sable, there's burdens on speakers that we think are okay to protect against obscenity, right? Right. And the court suggests that in Sable, I think there it was a ban on the dial-up horn messages and the court suggests some sort of age verification or something like that would be a better way to do it.  And that would be a burden on the speaker, right? Exactly. Yes. And the same thing with adult theaters and all of that. So on and so forth. Okay. If we were to vacate the Fifth Circuit, as you've suggested, there's some question and discussion about what the world looks like then. Would the preliminary injunction of the district court spring back into effect so this law that's already taken effect will now no longer be enforceable? So I think that'll be a question for the Fifth Circuit in the first instance. If this court vacates and sends it back to the Fifth Circuit, when the court's mandate issues, the appeal would spring back to life in the Fifth Circuit and it would go back to the state of the world before the Fifth Circuit issued its opinion. The state of the world was that the Fifth Circuit had granted a stay of the preliminary injunction pending appeal. I think it would be open to the Fifth Circuit with the benefit of whatever guidance this court provided in its opinion to decide in the first instance whether to reinstate that same stay pending its further considerations. How could it do that if we told them they've done the wrong standard? I suppose they'd have to go back and do the right standard. But in the interim, what happens? Well, I think there would be some period of time, I think it's 35 days before this court's mandate issues. If I were Texas, I would go to the Fifth Circuit in the meantime and ask to reinstate the stay. And I think the Fifth Circuit should look at it with the benefit of this court's guidance. And I note that as the parties have informed the court on Monday, a panel of the Sixth Circuit stayed a preliminary injunction of Tennessee's very similar law and said that they concluded that a stay was appropriate, even on the assumption that strict scrutiny applied. Mr. Fletcher, I share some of Justice Thomas' discomfort with watering down strict scrutiny. And I think it's common ground, even with petitioners, that the state has a compelling interest in protecting minors. And I mean, I think petitioners would be back here challenging even a different law as failing strict scrutiny, but they've left open the door to the possibility of it satisfying strict scrutiny. But, you know, come on, fatal in fact. And I think there's a sense here that the state should be able to protect minors from some of this, but there's not a whole lot of room in the way we traditionally understand strict scrutiny for that to happen. What is your reaction to spillover effects and whether this really would be kind of loosening strict scrutiny? So I appreciate the concern. And I guess I'll say just as a matter of first principles, some of your earlier questions got it. Wouldn't intermediate scrutiny make sense here? I have a lot of sympathy for that, because if we were writing on a blank slate, as I said to Justice Thomas, the government was arguing for something like intermediate scrutiny in this context. So as a matter of first principles, I think there's a lot of force to that. But we're not writing on a blank slate. We have this series of precedents. And so then I think the question is, can we find room for this intuition within the parameters that the court's decisions set? I think you can, as some of the reasons I was explaining earlier explain. This is the case where the state has a compelling interest in restricting speech based on its content that is exceedingly unusual. And so I think for the court to say states have room here even under strict scrutiny, but that is because of the particular and unique nature of the interest here, I think would give states the room that they need in this context, but without watering down the strict scrutiny inquiry in other contexts where that's just not going to be true. Thank you, counsel. In terms of the precedents that you're talking about, there are cases where the technological developments caused the court to reconsider the precedents that were developed under quite the horse and buggy days, but prior to very significant changes. Why isn't that a pertinent factor to consider here? I think it might be pertinent, Mr. Chief Justice, but the court has also said more recently, including in that choice last term, that the principles of the First Amendment don't change with technology and has tried to maintain the same fundamental First Amendment principles and apply them to new technology. And so at least to me, all of the technological developments, which I agree are incredibly relevant to this question, fit more naturally in deciding how scrutiny applies and explaining why states are likely to be able to satisfy strict scrutiny in this space than it does to revisiting what the fundamental standard for a content-based restriction on speech ought to be. Well, the principles of the First Amendment don't change with technology, but the application of technology to the First Amendment questions can alter the perspective in terms of what is affecting the principles and what isn't. How you apply speech protections face-to-face might be different if you're in a situation where you're talking about the telephone or all sorts of other things. Historically, there have been changes in the applications of the law. Even if you're corrected, the basic principles are the same. And I just repeat it, one of the things that's striking about the case is the dramatic change in the technology of brick-and-mortar stores to the access to pornography, which also seems to be dramatically different from what it was 40-whatever years ago. So let me try answering that two ways. One is that I do think there's force to the idea that there has been a lot of change, but that argument sounds a little bit like the argument that Texas and Florida made last term in NetChoice where they said the content that's going on on social media platforms is totally different than the editorial page of the Miami Herald. That calls for a different standard of scrutiny, and this court said, no, we're going to keep the same standard of scrutiny but acknowledge that the application might be different because of the different facts. I think the way to be consistent with that here would be to stick with the same standard. The second thing is if that doesn't persuade you, I think it might be a reason to revisit the standard of scrutiny if you've reached the conclusion that strict scrutiny does not give states the window, the freedom to solve this problem. We think that there's reason to believe that it does leave them that freedom, and if that's true, then I think that's another reason not to revisit precedent in this area. Thank you. Justice Thomas? But you would admit, though, that we're in an entirely different world. I mean, Playboy was about squiggly lines on cable TV. I don't disagree with that. And the world of Ashcroft was a world of dial-up Internet.  Ashcroft was worried about children accessing this material on, you know, at home, on home computers in libraries, in schools. Now every child has a smartphone in their pocket with a high-speed Internet connection. And didn't change in technology affect our opinion from the reversal from Quill to Wayfair? I don't know, Justice Thomas. That wasn't a First Amendment case. I understand that. So I don't mean to be trying to lay down bright-line rules or to suggest that technology is never a reason when the court is revisiting a precedent as it was doing there. Here we think Texas hasn't really squarely teed up a request to overrule precedent in the way that this court usually expects before it takes that step, and instead the Fifth Circuit thought that it was applying and being consistent with this court's precedent. We don't agree with that. Again, I think if you were going to take another look at Ashcroft based on a party coming in and making a pitch to overrule it and the other line of precedent that it stands on, then technological change might be relevant. Our submission here is just that you don't need to. Well, but as well as the fact that you thought that your argument in some of the earlier cases like Reno, you suggested a lower standard of scrutiny and you thought it would certainly play a role here now. We did. But again, this court disagreed. Yeah, you threw in the towel, but, you know, well, we got, we got told no three times. Well, and that's just, you shouldn't feel offended by that. Justice Alito. Well, I don't want to belabor Ginsburg too much, but it is a precedent of the court. And do you want us, you don't want us to overrule it. No, not at all. All right. So you then have to explain why it is not very important, if not controlling here. And what I've heard from you, you'll correct me if I'm wrong, is that Ginsburg did not consider the burden on the seller or the burden on adults who wanted to purchase these magazines. Is that how you distinguish it? I agree with the second part. I do think it was, as Justice Gorsuch explained, it was a conviction of the seller, but the argument he was making, and I think this is clearest on 636 to 637 of the court's opinion was children have the same first amendment rights as adults. And the way the court framed its rejection of that argument, and this is a quote, was the law does not invade, quote, the area of freedom of expression constitutionally secured to minors. Well, I don't think that's exactly the argument that was actually made. And Mr. Ginsburg was represented by some very sophisticated attorneys. Here's something that they said in their brief, the policing problem would become an impossible burden leading the bookseller to abandon sale even to adults, thus the adults would be deprived of such literature because it was not available for distribution to adolescents. So the argument was before the court, the court presumably was aware of it, took account of it in its decision and said, Justice Brennan's writing for the court, the proper standard of review here is rational basis. So I don't see that in the court's opinion. I don't disagree that the parties may have put it before it, but we usually read the court's precedents for the arguments and the issues that the court actually decides. The other thing that I'll say is that the court did confront arguments that were squarely framed in terms of the rights of adults that were burdened when Congress was attempting to protect minors from this material in cases like Sable and Playboy and Reno and Ashcroft and reached a different conclusion. And the last thing I'll say, you know, I've mentioned to several justices why we've argued for something like intermediate scrutiny before, as I said to Justice Barrett, I think there was force to that if we were writing on a blank slate. The reason I think we haven't argued for rational basis review is because that would lead to results that I think even my friends from Texas would be hard pressed to defend. Banning the speech entirely would be a rational basis of keeping it away from children. Even just in the realm of age verification, requiring you to register with the state to get a special card to get this material and to keep records of who is viewing what might be a rational way of keeping it away from children. But those are very hard laws to defend, and I think that's another reason why we've shied away from arguing that Ginsburg means rational basis in this space. I want to go back to your assertion that if we thought that the Fifth Circuit applied the long standard of review, we would be required to cause the preliminary injunction issued by the district court to spring back into effect. Why would that be true? The question before us is whether we should reverse a decision that stays that preliminary injunction. So would we not have the power to reverse the decision insofar as it said that rational basis was the proper standard of review, but leave it in place because we thought hypothetically that this law would satisfy even strict scrutiny? Would that be beyond our power? Just to get the procedural posture exactly right, I don't think what's before you is a decision on the stay. What's before you is the Fifth Circuit's final decision reversing the preliminary injunction in this court. And so if you vacate that decision, I think normally it would return the case, the appeal to the Fifth Circuit, and the ball would be in the Fifth Circuit's court in the first instance. Well, it would return the case to the Fifth Circuit on the terms that we thought were appropriate in returning it to the Fifth Circuit. And again, I don't suggest the court lacks the power to, if it wanted to grant some sort of a stay itself, I'm sure that there's a way for the court to do that. If the court wanted to provide guidance in its opinion, including very prescriptive guidance, I'm sure the Fifth Circuit would follow that guidance in deciding what the status quo ought to be while the litigation continues. All right, just so that I have them fresh in mind, you mentioned certain matters that you thought would be important to clarify under state law in making a judgment about whether this law satisfies strict scrutiny. Could you just tick those off again for me? Sure, there are three. One is the one-third requirement and whether that compels age gating of material that is protected, even as to minors, if it's on a site that is otherwise covered. The second question is the permitted methods of age verification, and in particular, whether the sorts of biometric methods that are highlighted in the amicus briefs comply with Texas law. And the third is the question about when Texas law refers to obscene as to minors. Which minors are we talking about? Are we talking about even the youngest minors, or are we talking about all minors, such that material that is only appropriate to older minors is prioritized? Justice Sotomayor? I'm not sure I understand your first point, so could you go through that again? Sure. So I think one of the points that petitioners make is that the Texas law requires age gating of a website if more than one-third of the material on that website is sexual material that's harmful to minors. And petitioners say that means we have to age gate material, or age gate a website, even if up to two-thirds of the material is constitutionally protected, even as to minors. And they say that means that the statute isn't narrowly tailored and that it restricts speech unnecessarily. I understand my friends from Texas, although of course the general can correct me, to say that Texas law doesn't necessarily mean that, and that a website might be able to comply by age gating only the material that is harmful sexual material and obscene as to minors, and not limiting minors' access to the other protected material. I think the law is easier to defend if you accept that construction along those lines. All right. With respect to the privacy or the prevented methods of ID, a counsel for petitioner says that the more secure methods, I don't even know what YODI is, but the more secure methods aren't prohibited by this law. Do you think that that is ambiguous? I don't know the answer to that, and I defer to the parties on that. I think as counsel for petitioners said, the Texas law seems to say that you need to have a commercially reasonable method that relies on public or private transactional data, and I think the question would be, although again I welcome correction on this, whether something that requires, that relies on biometric face recognition, voice recognition, something like that, satisfies that requirement, and we just have to make a decision. So to the extent that whatever methods are found to be permitted under Texas law, if they have greater risk to the user, that would be part of the calculus? I do think the concerns for the user are part of the calculus, yes. All right. Thank you. Justice Kagan? Mr. Fletcher, I want to talk to you about the life on a blank slate. So pretend that the precedents don't exist for a moment. I do want to come back and ask you about the precedents, but pretend that they don't. And make it really blank. It doesn't seem to me that you are required to say, well, we first argued it in a non-strict scrutiny way, because obviously you argued it in that way. You were defending federal statutes. That was the most natural way to defend them. So I want to take out the fact that your first argument was the non-strict scrutiny argument and really say, as you're standing here on a blank slate, it seems to me that there are possible spillover dangers either way. One is the spillover danger of you relax strict scrutiny in one place, and all of a sudden strict scrutiny gets relaxed in other places. The other is the spillover danger of you treat a clearly content-based law as not requiring strict scrutiny, and all of a sudden you start seeing more content-based restrictions that don't have to satisfy strict scrutiny. And I just want to ask you, like, how you weigh those dangers and, you know, I read you as saying it's just got to be the case that states can do some regulation in this area. And the question is, how does that happen? Does it happen by notching down the strict scrutiny standard, or does it happen by saying for some reason, which we'll figure out how to articulate, this set of restrictions comes outside it? Yeah. So you read me correctly, and I think writing completely on a blank slate, I genuinely think there would have been two reasonable ways to deal with this problem. It really is a unique feature in the First Amendment where you have the same speech that's protected as to some people and not protected as to others. And in fact, everyone agrees the government has a compelling interest in restricting access to that speech based on its content. It's a special, I think, unique problem. One way to approach it would have been, as you say, to say something less than strict scrutiny, even though it's content-based. Another approach, the one I'm advocating here, would be to say strict scrutiny applies a little bit differently. I would resist the idea that it's watering it down. I think it would be to say the regular strict scrutiny standard just applies differently because of the special features here. As a matter of first principles, I'm not trying to duck the question. I'm genuinely saying I think either of those would have been equally workable, but we're not writing on a blank slate, so this is fighting the hypo a little bit, but I think this is what typically fails. No, it's the next question I was going to ask, which is, you know, what about Ashcroft and all our other decisions makes you think that they're simply not distinguishable in the way one might want to distinguish them? I mean, I think Ashcroft is particularly hard because that was a law that looked in terms almost exactly like the law at issue here. I take Justice Barrett's point that their age verification was an affirmative defense rather than part of the law, but the substantive requirements that the law imposed, in effect, were basically exactly the same, and also I think just the logic of the court's opinions leading up to that in the earlier line was defining sexual material that is harmful to children, this category of material that kids can be prohibited from seeing, that, the court said over and over again, was a content-based restriction, and I think that then starts to bring in, and this gets to my complete answer to your earlier question about why I'm more worried about, I think it was the second category of spillover effects than the first, that starts to bring in not just this particular corner of the First Amendment law, but also this court's cases like City of Austin and Reed and all of the other places where the court has laid down, this is what it means to have a content-based law, and I worry a little bit that if you start now trying to carve back on Ashcroft and those other cases, you would have spillover into those broader areas of First Amendment law, whereas recognizing, as we've suggested, that strict scrutiny functions differently here is very limited to this particular corner of the law. Thank you. Justice Gorsuch, I guess I just want to follow up on Ashcroft just a little bit, and you seem to think that's the major impediment. The most direct one, sure. That was a PI, right, where the government didn't contest the level of scrutiny, it had given up by then, as you point out. Does that help? So I think it was a PI, and I think the court was very self-consciously tentative in some parts of its analysis, especially the application of strict scrutiny towards the tail end of the opinion. I don't think the court was tentative about what the relevant level of scrutiny was, and I read it to say at 660, 665, 670, we got a content-based restriction of speech, and so strict scrutiny applies. Also an incomplete factual record, which it repeatedly emphasized, too, right? Completely agreed, and I think all the more reason why I think lower courts have gone overboard in treating its application of strict scrutiny as controlling, even now, 20 years later, but I would put the standard of scrutiny in a somewhat different category. What do you think about Justice O'Connor's concurrence in Reno? I think there's a lot of force to her ideas. I take her idea to be a lot like Justice Kagan's, like this is a thing that states have been able to do in the physical world, and there ought to be a way to translate that same idea into the world of the Internet. We very much agree with that. We have not advocated for the same standard that she advocated for there, because we view the court's precedence as requiring a different and higher standard, but in terms of the thrust of her logic and her concerns about what states ought to be able to do, we agree. Do you agree with the principle there that if there is a compelling government interest, there must be some way in the world presently to effectuate that interest? I think there's a lot of force to that. I hesitate to say that's always true in every circumstance, because... In this area, right? In this area, yes. Justice Kavanaugh? Just to follow up on Justice Gorsuch and Justice Alito's questions about if we vacated exactly what the state of play is, there was a stay before the decision, so is a P.I. in effect or not in effect after our mandate issues? I would think that absent further action, and again, we're just in amicus here, so I don't want to speak for the parties if there's something that I'm missing, but I would think that absent further action from the Fifth Circuit, if this court vacates the Fifth Circuit's decision and remands and its mandate issues, the result would be that the preliminary injunction would come back into effect, but if I were defending the law before that happened, I would renew my previously granted motion for a stay pending appeal, and I would make arguments about why a stay ought to be entered pending the Fifth Circuit's further consideration. Okay, and do you think a stay should be issued? We haven't taken a position on that, because it's bound up in some degree with some of the uncertain questions about what the Texas law means. I mean, the court's going to have to make a likelihood of success determination, and as Justice Kagan said earlier, you've been looking and thinking about this for a long time. You don't have a likelihood of success assessment? We don't, no. Okay. On Ashcroft 2, how do you think we should handle specifically the application of the strict scrutiny standards? Should we just say that's overtaken by events, it's no longer valid? Tell us how you think we should phrase that. Yeah, you mentioned stare decisis earlier in your question to my friend. I don't think the court's application of scrutiny is a legal holding of the sort that's entitled to stare decisis effect. I read it as self-consciously very tentative. The court emphasizes we're on a PI, it's abuse of discretion. We have a record that's five years old. At the last couple of pages of the opinion, the court says nothing that we're saying forecloses even the district court and the third circuit in this very case from concluding that strict scrutiny is satisfied. And I think the court can say, given that, it's obviously true that nothing in that part of the opinion forecloses courts from deciding 20 years later with the benefit of 20 years more experience that strict scrutiny is satisfied by laws that share some of the same features as the law at issue there. Then one question on how you would apply strict scrutiny. It seems to be one of the tricky parts of that because everyone agrees compelling interest. And you say in your brief appropriate tailoring, which I think is a good phrase. One thing that concerns me is oftentimes someone will say, well, there's a less restrictive alternative. I think it's really important to make clear that any less restrictive alternative has to serve the compelling interest or important interest if it's intermediate to the same degree. Yeah. Am I right in saying that? I think you're right in saying that. I think Reno and Ashcroft said that, and I do agree that's important. Okay. Thank you. Justice Barrett. Justice Jackson. And those are the sort of things that the fifth circuit could say on remand, and in fact would, right? In other words, they would go through the record and they would try to assess whether the district court got it right with respect to other alternatives and that sort of thing.  And that's why the government is saying, why don't you remand it instead of us trying to take on that kind of burden? In deference to the court's usual practice, it's a court of review, not a first view. Here there are some uncertainties about the law that we think are additional reasons for the court not to wade into it now, so yes, exactly. With respect to the technology question that came up earlier, I guess I'm just trying to figure out which way it cuts that we've now advanced in technology. I could see that it cuts both ways. On the one hand, we have a new set of circumstances that allow for minors to get this material very easily and it's ubiquitous, but I think Petitioner's argument is that the technology really heightens the risks and burdens on adults who are trying to access this material if they have to do a biometric scan or they have to do certain kinds of things that are very impinging on privacy in the way that technology now allows. So it's not clear to me that just the fact that we have new technology is running in favor of allowing this law to stand as is. I agree with that, that technology doesn't necessarily just cut in one direction and you'd want to ask both of those questions. What I'd say about technology and the burden is two observations, one factual and one a little bit more legal. The factual observation is I do think that the world now includes more options to verify your identity than existed in Ashcroft II that are more broadly used. I think one of the things that gives us some confidence in this is that it's being used in the gambling industry and buying alcohol and wine. It's just a much more common part of society and I think that can give courts more confidence in saying this is an appropriate method of age verification. The second one is just a legal point. I think there's some tendency from my friend's petitioner side and the district court to say that the relevant burden is will people be chilled from doing this and I think burdens on privacy are important but I think the court should ask those questions objectively, not subjectively. There might be people who are embarrassed to show an ID to buy an adult magazine or to take something out of the blinder rack in the store, that's not enough. The question is, is the burden that's being imposed on speech, objectively speaking, excessive or unnecessary? Okay. And one question, I noticed that your brief didn't say anything about whether the facial nature of this petitioner's challenge affects the analysis and I know there's a small part of respondents' brief that goes into it and I presume in thinking about it that that's because the distinction between facial and as applied really doesn't have any bearing on the question of the level of scrutiny. Is that right? That's exactly right. Before deciding whether or not the law is facially invalid, you have to figure out what are the relevant standards as the court did in net choice and that's the question we take to be squarely presented to this court now and that's why we focused on that and not how the answer to that might cash out on a facial versus as applied basis. Thank you. Thank you, counsel. Mr. Nielsen. Mr. Chief Justice, and may it please the court, petitioners don't dispute that their websites are not meant for children, that they harm children, and that children are watching. The court faced the same situation with brick and mortar stores and applied rational basis to a law limiting adult content to adults. This case is a digital version of Ginsburg. Three cases prove the point. Ginsburg itself applies rational basis where a store can only avoid liability by making quote, a reasonable bona fide attempt to ascertain the true age of customers. Sable applies rational basis where speakers must separate their audience before speaking a message obscene to some but not all. And in Ashcroft 2, the court didn't apply rational basis because Congress, limited by 1990s technology, went well beyond Ginsburg and Sable. To understand Ashcroft 2, you have to understand Ashcroft 1 and look how the court in Ashcroft 1 treated Sable. Age verification today, however, is simple, safe, and common, including non-identifying means. Petitioner's view of Texas's law is contrary to Texas's view of Texas's law and the Fifth Circuit's view of Texas's law. Regardless, if strict scrutiny applies here, Texas would have to satisfy strict scrutiny to keep kids out of strip clubs. This court's cases do not require that. Neither do history, tradition, or common sense. In all events, even if heightened scrutiny applies, Texas easily satisfies it, especially facially. We've tried content filtering for decades, and the problem has only gotten worse. I welcome the court's questions. The Ginsburg sounds simple, but in the tech cases we've had recently, we're talking about hundreds of millions of members to certain sites, billions of visits, multi-billions if not trillions of exchanges. How do we determine what burden, and assuming we agree with you, and I think most people do, that kids are to be protected, how much of a burden is permissible on adults on First Amendment rights? Well, so long as Sable, so long as Ginsburg is part of this court's canon, any burden less than the burden of issue in Ginsburg necessarily must be okay. So how does that translate in a world in which you're not talking about one-on-one transactions, but billions of transactions? Yeah, that cuts in favor of Texas. One of the important parts of modern age verification technology is that you can do it without identification at all. The Fifth Circuit was clear that under Texas law, biometric scanning is okay. In other words, there's no ID or anything like that, it's just a face scan. If that's too much, I'd point the court to the brief of the Age Verification Providers Association. You can do a hand scan. There's all sorts of things you do that have no identifying information. But you're talking about rational basis, and you would think that rational basis would This is where I think it's important to understand the scope of Ginsburg. Ashcroft 2 is precedent, we're not fighting that. Ginsburg, as I read it, is saying, so long as what you are doing is verifying that this person is a kid, that's rational basis. If you start doing other stuff beyond that, then you're in the world of Ashcroft 2. What is verifying that this person is a kid took the form of a law that the state says what we'd like to have is everyone who comes in here needs to present a copy of their passport, a copy of their birth certificate, and an affidavit from their biological parent. Is that also rational basis in terms of the burden that it imposes on adults? No, Your Honor. Why not? Because that's far in excess of what the court recognized in Ginsburg. But the court in Ginsburg wasn't analyzing the means by which age verification was occurring. You see, my hypothetical is turning on, fine, if the court is allowing for age verification, how far can a state go in terms of burdening adults showing how old they are? And it seems to me that you're conceding that at some point a state would not be able to require an adult to jump through a million hoops to prove their age. And if that's the case, isn't that the work of strict scrutiny? I mean, I thought that what strict scrutiny was doing was assuring that the burden that's being imposed is one that is necessary because we understand that adults would ordinarily have access to this material. We appreciate the state's interest in protecting children, but we're not going to let the state, you know, impose like a thousand things that would make it really, really hard for adults when there are other alternatives to protect children. I thought that was like the whole point of the strict scrutiny analysis. So there are two precedents that the court has to give weight to both of them. There's Ginsburg and there's Ashcroft too. I understand, but you're reading Ginsburg to suggest that the court has left every kind of age verification that a state could require of an adult. To the extent that Ginsburg, you say, is focused on minors and states protecting minors and the fact that the burden falls on adults to prove their age is really not a big deal. I'm just testing your contention that a state looking at Ginsburg could do something very, very burdensome in order to protect minors. What I'm trying to say, I'm not suggesting that you could do anything under this. And I know that because of Ashcroft too. There are two cases, both of which are precedents of this court, both of which have meaning. But wouldn't rational basis allow you to do anything? I mean, the state would say it's rational that we have a parent's affidavit because people can lie about their age and what we want is to make sure that minors are protected. And Ashcroft too says at some point you've gone beyond Ginsburg. Unless we're writing Ginsburg out of the law, the burden is no greater than showing an ID in Ginsburg. That's not strict scrutiny. What is that point? What is the point at which you cross over the Ginsburg-Ashcroft line in your view? So this is where I think you can't understand Ashcroft too without understanding Ashcroft I. And in Ashcroft I, the fight between the plurality and the rest of the court was, hey, does stable mean that it applies whatever the technology is? In other words, whatever the burden, if you can't do it, who cares? Or does stable mean that it has to be technologically and reasonably possible? The court disagreed about that. I don't know where the answer is, where the court is on that extension of stable. I do know that Ginsburg is a holding of this court that says so long as the burden is showing an ID, that doesn't trigger strict scrutiny. We are less than that. So I don't know the exact line. Can I ask you, General, and this is a shifting ground some, but you've now heard Mr. Fletcher's three concerns or three questions about your law. I think you heard them twice, so you probably wrote them down.  How does Texas's law fare given those three concerns? Are those genuine concerns? Do you pass them or fail them? They are not genuine concerns. First, the one-third requirement. I have two points on that. That's how states generally define sexually-oriented businesses. Illinois says you're an adult bookstore at 25% of your content. That's how San Francisco defines whether you're an adult bookstore. So that's point one, just generally. But specific to this statute, I urge the courts to look at the language. One-third requirement applies to whether they have to satisfy whether the law kicks in. But it's not referring to the content at issue. I'm looking at the language here in section 129B-002. The key words are the material. Is that referring back to all the material on the website or sexually harmful material to minors? No Texas court has had an opportunity to look at this. This is a facial pre-enforcement challenge. But our reading of that is it's going to be limited to the sexually harmful material. Okay, number two? Number two is the permitted methods biometric. We have a holding from the Fifth Circuit on this. This is at Petition Appendix 11A. Biometric scanning is fine under Fifth Circuit law and under Texas law. We agree with that. That's in our brief. That is the position of the Attorney General's office. And number three is obscene as to minors. Again, two points. This was the fight or one of the fights at issue in Ashcroft 1. The court said we followed the same language and the court said that was fine in Ashcroft 1. But our reading, again, in Texas, I'll tell you Texas courts read statutes carefully. They follow the text of the statutes. I am looking at our definition of sexually material harmful to minors. That's section 129B-001. The third part is we define minors as those under 18, taken as a whole, lacks serious literary, artistic, political, or scientific value for minors. In other words, that includes up to people who are 17. So their idea that- So if I understand you correctly as to those three, as to number two and number three, you say, well, even if that's a legit concern, our law is okay with respect to it. Yes, Your Honor. I don't think that that's quite your answer with respect to number one. Is that right or is that wrong? No, I think we're fine with number one. My point is that even if I'm wrong about how Texas law works, we're still okay because then we're like Illinois and San Francisco. But I don't think I'm wrong about how Texas law works. I see. If you take the content and you put it behind an age screen, we're not counting that. So if you- Just to clarify with respect to point one, so if a particular website has some hardcore pornography that is obscene as to minors and then it has videos of somebody reading Lady Chatterley's Lover or something like that, can the latter be segregated? So I have to argue with one hand behind my back because no Texas court has an opportunity to look at any of this. I'm just giving you my reading of the statute and based on what I know about Texas courts. And the answer would be yes, it could be segregated. But no court has said that yet. Correct. And that's part of the problem. I know the court has had some unhappiness with these facial reinforcement challenges. This should be exhibit one in the case against them. This law doesn't protect someone or says you can't retain this information. The other side in its brief argues that that doesn't mean you can't sell it or give it away. Some responses to that. One, I don't know if that's even technologically possible. I don't know how you send the information without having at least instantaneously retained it. That doesn't make any sense to me. Or you have to receive it to make a choice. Someone is receiving it to make a choice and presumably the law says after you've made the choice, is this an adult or a child, you've got to delete it. Correct. But in that interim, when I receive the information, before I make the choice, I could just give it away to another entity. My name, when I visit a website, unless I've prohibited the website from doing that, my viewing history, everything is automatically transferred to other people. So, let's say that I'm wrong about that. Again, I don't know the technology. That's the point. I don't know. But I went anyway. This is why it's important. That's once you get to a trial and somebody figures this out. I'm saying that under the Fifth Circuit's view of the law, which this Court did not grant search or review, biometric scanning is okay. So, there's no identifying information for it to even turn over. So, it wouldn't make sense. Even if you transferred it, you're not transferring identifying information. And even if you did have identifying information, no one does it. Again, I pointed the brief to the Age Verification Association. We're talking in a vacuum because I don't know the record. I do understand that biometrics sort of looks at a face. Mr. Fletcher said it looks at a hand, or someone said it looks at a hand. I have no idea how it works. But I do know that DNA evidence can be picked up from the paper I just touched. And I don't know if biometric information can be used to create other things. I don't know any of this. None of us do. So, the question is, before any judge can determine whether this law and the extent of its burden or lack thereof, someone has to determine that, doesn't it? Yes, Your Honor. That's my only point. I'm sorry. Keep going. Just one more second. The last point about all of that is, of course, the petitioners get to choose who the age verification provider is. So, if they don't like the age verification provider's policies about that, well, they can stop that, too. It's within their power. They have self-help measures. I think earlier when you were discussing Ginsburg, you said, Ginsburg applies to age verification requirements, and thus age verification requirements get rational basis review. And that's how you distinguish. But then you said, not if they're too burdensome, which doesn't sound anymore like rational basis review. But I'm actually not interested in whether we call it intermediate scrutiny or strict scrutiny or rational basis for purposes of this question. Is the statement of principle, First Amendment principle, that you're seeking at a broad level, age verification requirements are permissible so long as they're not overly burdensome on adult access? Yes. Yes, Your Honor. And that's how I understand it. And those are the exact adverbs and adjectives, overly burdensome, or do you have a preferred statement? I mean, I guess I would say so long as it's incidental to verifying age. Again, I don't know what overly burdensome means. That's a little different. Exactly. Okay. And then you have to look at how much burden is there on the adult access, which I think you've conceded, not conceded is the wrong word, but just acknowledge that that is going to necessarily be part of the inquiry, because you've said a few times if it's more than the Ginsburg burden, you know, at some point it may cross into too much. Correct, Your Honor, because we are trying to reconcile Ashcroft's two and Ginsburg. And you've, again. I don't think I conceded, but. Yeah, you haven't, I'm not using the word conceded in that way. You acknowledge that a law, for example, that Mr. Fletcher identified that just banned all pornography on the idea that that would serve the interest in preventing children from accessing it. That's impermissible.  That's the second part of Sable. Right. And then also to Justice Jackson, if the requirements for age verification were so onerous and unnecessary that they burdened adult really prevented many adults from accessing constitutionally protected speech as to adults, you also acknowledge that would be impermissible. Yes, Your Honor, because, again, that's how we read Ashcroft too. Yeah. Because, you know, you heard my interchange with Mr. Fletcher, you know, and also with your friend on the other side when I was trying to see if there was a way just exploring how do we think about Ashcroft too. And, you know, there is some content discrimination here, right, because you do have to look at the content to decide whether the age verification requirement applies. So I take your answer to Justice Kavanaugh when you say, no, no, no, no, no, it wouldn't be what Mr. Fletcher said that if rational basis review applied they could ban the whole category because that would be a rational way of protecting children. You say that's not the case because we look at Ginsburg and it's just age verification. Yes, Your Honor. So is this like an age verification carve out, like it's content discrimination doesn't trigger strict scrutiny if we're talking about age verification? Is that the argument? I guess there's two conceptual ways to understand it. I'm not sure what Ginsburg, which one they did. I mean, one is if it's just gatekeeping, as long as you're allowed to have two different groups, you have to have some way to tell the difference between the two. And if it's just incidental to gatekeeping, that doesn't itself trigger strict scrutiny. That's one theory of Ginsburg. The other theory of Ginsburg is that just looking at identification just isn't a constitutionally cognizable burden. That would fit in with the Crawford line of cases for voting. That would fit with the American Library Association where they say going to the librarian, that's embarrassing. That's just not a constitutionally cognizable burden. But if I understand you correctly, you are saying, and this goes back to Justice Jackson's hypothetical, that when the burden gets too great, right, when, you know, they're asking you to do all these unreasonable things, right, that's the point at which, if I understand you correctly, tell me if I don't, it flips into not rational basis review, but into heightened review, strict scrutiny. Correct, Your Honor, that's how we read Ascoff too. Okay, so, I mean, that is a little bit peculiar, isn't it? I mean, it's obviously the case that the extent of the burden should matter a lot in the constitutional analysis, but it usually matters when you're applying whatever standard you're applying. It doesn't usually, you know, push you like, oh, the burden is really, this burden, it's very hard to meet this age verification requirement. So because that's true, it pushes you into a different standard of scrutiny. I don't know if I can think of anything like that in our law. Yeah, I agree. That is a curious effect of reconciling Ginsburg and Ascoff too. It's just inherent in having an age, you know, one category that can't access and another category of people that can, and you have to have some mechanism, as you just said, for determining it. But I think in reply to Justice Jackson and Justice Kagan, you've said, yes, it could get too burdensome. In other words, even age verification, I think Justice Kagan was just saying this, even age verification could get too burdensome if you did things like passport or something like that. Correct, Your Honor. Again, whether you call it, whatever you call it. But I think what you call it is important. Well, I'm just going to ask, whatever you call it, it can't get too burdensome. So, I mean, the North Star here is so long as Ginsburg has some meaning, so long as the burden is not greater than the burden at Ginsburg, rational basis of life. But Mr. Nielsen, the burden was not the issue in Ginsburg. That's my only problem with what you have said, is that I took Ginsburg to be establishing the initial principle that you start with, that it's okay to treat minors differently than adults, period. That that's the holding of Ginsburg. It wasn't talking about the extent to which figuring that out was going to burden adults and how much the adults' First Amendment rights were impinged by operating that principle. It was the first case to establish in this context that minors don't have the same rights as adults to access this material. Then we go on in other cases, in the cases that Justice Sotomayor brazes, to evaluate, okay, now that we know that we can separate these two categories of people, you're absolutely right that we have to have some way of doing that. But these other cases are about how burdensome the way of doing that is and to what extent. I mean, and you seem to be agreeing that there's a point at which the burden that you're imposing on adults are going to be too much. And my only point about the standard mattering is that I thought the work of rational basis review and strict scrutiny was to evaluate whether this is too burdensome. That we say because the adults have a certain scope of First Amendment rights, you can only impose a burden that is the least restrictive way of reaching your compelling interest. So we don't need a new set of principles or tests. We have a test. The test is strict scrutiny, and the government says, Mr. Fletcher says, there might be a way in which this actually satisfies that. So that test can't be right. And the reason why it can't be right is it would mean that if a state wants to stop kids from going into a strip club, they have to satisfy strict scrutiny. No, because kids going into a strip club poses no burden on adults. That was going to be my other question for you. Why would saying a kid can't go into the strip club pose any burden on an adult who wanted to? If we said you need to look at IDs, if you have somebody you can't tell they're an adult or not to go into a strip club. So we apply strict scrutiny. You would apply strict scrutiny to that. And then we say, is this the least restrictive means? And you say, yes, fine, you can do it. That is not at all consistent with our tradition and history. As I understand strict scrutiny, again, I know there's different views on this. As I understand strict scrutiny, the idea is this is generally not okay, but sometimes we'll make an exception if there's really extraordinary reasons for it. But in our history, we have always said kids can't come and look at this stuff. So it seems not correct to me as a historical matter to say, well, actually, it's always been presumptively unconstitutional. But there's one thing, but we've done it forever. Strict scrutiny somehow has always been satisfied. Mr. Nelson, I want to take you to the questions that Justice Kagan was asking Mr. Fletcher about the dangers. I just want you to posit this. This is all just pretend. Let's imagine that you should win, that Texas should win. And Justice Kagan asked, if that were so, if there is a way that states should be able to regulate and the federal government should be able to regulate this, we have to decide how our First Amendment precedent might accommodate that. And Justice Kagan identified for Mr. Fletcher two options. One would be to say that this can satisfy, this kind of regulation can satisfy strict scrutiny. And the other might be to say, in this context, intermediate scrutiny makes more sense. I just want to take rational basis off the table. What do you think about that? Mr. Fletcher told us what he thought about the dangers that would lie in either approach. So I am very worried, not about this law. I think we're going to pass strict scrutiny. I hope that that is where the court is. But this law passes strict scrutiny. I am worried about my strip club example or any other sexually oriented businesses. If we start saying that the standard is strict scrutiny, I hope this court says, oh, that's okay. It passes strict scrutiny. But there's a whole bunch of law on strict scrutiny and a whole bunch of different judges across this country are going to apply it. There's a bunch of cases that say fatal in fact. And we're going to have a lot of PIs and a lot of emergency litigation. That's a problem. A real one. But that wouldn't be true necessarily if we wrote the kind of opinion that Mr. Fletcher had in mind, right? Because then you would say, this is the kind of strict scrutiny we're talking about. This is what will pass it. You know, take us seriously. That's within the control of this court for that language to be. I hope if such opinion gets written, it is very, very clear that we shouldn't get these PIs like that. General Neal, so let me see if this is consistent with what you're saying. Whenever, if a law prohibits or regulates a type of speech that is not entitled to any constitutional protection, the content of the speech does have to be examined at the outset to determine whether it falls within that category. And the fact that that preliminary examination is necessary does not mean that the law is content-based and therefore subject to strict scrutiny. Yes, Your Honor. So what that may suggest is that while this preliminary examination does not render the law content-based, so long as it is not too excessive, then strict scrutiny is not triggered. But if it crosses a certain point and it becomes too burdensome so that it is more than is reasonably necessary to make that threshold determination about whether the speech is constitutional and protected, then you go into another level of scrutiny. Yes, Your Honor. And I think that Ginsburg is consistent with that view. What about Paxman? The problem is that the speech here is not just about obscene speech, which is not subject to any rational basis scrutiny only because it's, I'm not even thinking rational basis, because obscene speech is illegal for adults or minors, correct? It can be made illegal, yes, Your Honor. It can be made illegal, not automatically, but it's not protected speech. Obscene speech is not protected. Exactly, Your Honor, yes. The problem is that this law doesn't protect, doesn't make illegal just obscene speech. It makes illegal obscene and indecent speech that might affect children, but adults can view indecent speech, correct? Yes, Your Honor, but not when children are there. No, I don't, let's not quibble, not when children are there. But you now have to look further than determining whether something is obscene. You have to figure out whether it's indecent for children, correct? Yes, Your Honor, I think so. So it's not merely checking to see if something doesn't have curse words or some fighting words or something like that. You're actually asking adults to not look at something until they do something else, something that's legal for them to look at. Yes, Your Honor, and I'm saying that so long as Ginsburg has any meaning... Counsel, you keep saying Ginsburg, all right? I look at the court's decision. The facts are that a bookseller was found criminally liable for selling, I think it was to a 16-year-old. The age doesn't matter right now, but an underage child. And his attack, and this is the court saying, is not that New York was without power to draw the line at age 17. Rather, his contention is the broad proposition that the scope of the constitutional freedom of expression secured to a citizen to read or see material concerned with sex cannot be made to depend upon whether the citizen is an adult or minor. And the court, he insists that the denial to minors under 17 of access to materials condemned by the law, insofar as that material is not obscene for persons of age of 17 or older, constitutes an unconstitutional deprivation of protected liberty. So it wasn't the age verification that was at issue in Ginsburg at all. The court had no reason to address it. The claim there, and what the court was speaking to as involving rational basis, was whether obscene, indecent materials had to be made accessible to kids under 17. So I'm having a, I mean, we can all read Ginsburg, but do you have any language in Ginsburg that even addresses the age verification issue? Point me to one line in the entire petition, other than describing the law, that talks about the burden of the age verification. Look at the very last paragraph of the opinion. And that's when they're discussing whether Mr. Ginsburg had notice about what his obligations were under the statute. The court was very clear. To be sure, that was framed as a due process type claim. It was very clear that they said no, you know. It was a due process. Well, it's very clear you know what you're supposed to do. I would also point to the language from the brief that Justice Alito already mentioned earlier. I've not heard of a court limiting a case to less than its facts. And there, he raised the argument saying, if this happens, I'm not going to be able to sell it to adults. And the court said, essentially, rational basis. That's how I read it. Thank you, Justice Thomas. Justice Alito. Anything further? Justice Kagan. One quick question on that. It crossed the line, in your view, because, and I want you to fill in the blank, and one possibility, of course, might be that the law there made it illegal to post, that is, to even create, to disseminate the information, with the age verification being only an affirmative defense. Yes, that is one. And there's three points on this. Again, Ashcroft doesn't say what the burden was. Yeah. So you have to, like, read into it. One is that. That is clear from the opinion and Justice Stevens' concurrence. That's a big problem. Another problem, if you go back to the district court, was to do this, you had to have databases of credit cards. This is not the law in Texas. You can't keep the data. So there are no databases. And the third is, again, to go back to Ashcroft 1, because you can't separate communities under 1990s technology, if you send it out to the world, it's to the whole world, that effectively meant some places, content that's not even seen as to minors, would be behind age screens. And that's a burden that does not exist here. We know for a fact that they can segregate by geography. When Texas's law went into effect, Pornhub left Texas, they're still operating in Louisiana with age verification, so we know that that's no longer true. Thank you. Justice Cavanaugh. Just to follow up on Justice Alito's formulation, which I thought was helpful, so the rule then, age verification requirements, generally permissible, but they can become too excessive to use this formulation, or I think you and I discussed, or it can become overly burdensome. And that's why I use incidental. Right. And it's so impermissible. But otherwise, they're generally permissible and commonsensical. I think that's the basic framework. Yes, Your Honor. Okay, and then just maybe to piggyback on Justice Gorsuch, this law is not too excessive or overly burdensome because, and fill in the blank. Because it's less than in Ginsburg, and we know that because you don't even have to provide identifying information. So in Ginsburg, if there was a marginal case, you couldn't tell if it was a kid or an adult, you had to look at the ID. You don't have to do that under Texas's law. So however you read Ginsburg, we are less than that. Thank you. Justice Barrett. Mr. Nielsen, there's been some discussion about what happens to the PI if we vacate it and remand it to the Fifth Circuit. Can you just say what your view on that is? Yes, so the view of Texas is if this Court were to vacate the Fifth Circuit's decision, then the Fifth Circuit's stay would go back into effect because it was only the Fifth Circuit's decision that took out the stay. That would take a separate order. Now, I know that the other side is going to fight me on that one, so we probably would do what Mr. Fletcher suggests and go back to the Fifth Circuit for clarification. I ask, you know, if anything else, that the language is clear to the Fifth Circuit that it knows it can read and suit the stay. That gets lost in translation sometimes when you get a decision from this Court. They're like, oh, I guess we can't do that anymore. We don't want to get summed wrapped. We respect the Court. If that were to happen, I urge the Court, please let the Fifth Circuit know. But our view is that because it was this decision that the Court is reviewing that vacated the Fifth Circuit's stay, the stay would then spring back to life. Justice Jackson? Your last colloquy with Justice Alito suggests that your argument is that rational basis review applies to state laws that serve merely to screen certain people from accessing online content that they have no constitutional right to access, or at least it could be sort of thought of in that way. And I guess neither party cited this case in their briefs, but I wonder whether this would run afoul of Packingham. I don't know if you're familiar with that case, but it's one in which we looked at convicted sex offenders who were trying to access social media websites, a state law precluding that, and we applied heightened scrutiny even though it sort of raised the same kind of dynamic that you say rational basis review would apply to. So I think we would have to try to figure out how the standard or the principle that Justice Alito articulated would be consistent with that case as well. I confess I probably thought I read every one of this Court's recent First Amendment cases preparing for today's argument. I did not read Packingham. I don't know, Your Honor. But I do know that we are in the exact same context as in Ginsburg, so whatever the scope of Ginsburg, we fall within it. And it turns in a way on whether or not we agree that Ginsburg was speaking to the burden or speaking to the age requirement as opposed to making the sort of initial determination that minors can't be treated or minors can be treated differently than adults. I trust Your Honor on that one. I would also say the other way that you could think about Ginsburg, of course, is that an ID requirement is just not a constitutionally recognizable burden at all, which would be consistent with some of this Court's other cases and not fall within the Packingham case. But the Fifth Circuit didn't hold that, right, that that would be. No, Your Honor. The Fifth Circuit at least saw that the First Amendment was implicated by this. And, in fact, I thought they thought it was a content-based restriction, but that Ginsburg still applied to sort of have a different rule in this situation. All I am saying is that you can conceptualize Ginsburg in multiple ways. We are okay under all of them. But if there are problems that way, I would urge the Court just to think, well, look at the voting ID cases and that sort. We are okay under those line of cases, too. Thank you. Thank you, Counsel. Rebuttal, Mr. Schaffer? Thank you, Mr. Chief Justice, and may it please the Court. Let me start with Ginsburg, if I may. We've talked a lot about the fact that that opinion was addressing only the rights of minors as invoked there. I would just also note, it was not an across-the-board age verification mandate. It was not operating in a context where you had a way to screen out minors from specific content. And it didn't say if more than one-third of the store is inappropriate for minors, minors have to be kept out of the store. This law differs in all of those respects. The question about, let's wipe away for the moment, Justice Kagan, the precedence that this Court has laid down for decades about sexually indecent speech that's inappropriate for minors via electronic media and via the Internet. Let's wipe it away for a moment. I strongly urge this Court to stick with strict scrutiny as the applicable standard of review when we're talking about content-based burdens on speakers. This Court has an area of law that is clear, that is well understood, that is reliable, that will withstand mounting and varied attacks, because we all know when strict scrutiny applies, it applies here. And I would urge the Court to stick with it, even if we forget about the on-point precedence for the moment. There are principles that I think are important, reliable principles that will serve us well going forward, yes, in this context, but also in others. And so that brings me, Justice Kagan, to your question about what about 20 other laws that by some views may look a lot like Texas's. I can tell your Honors, this is the worst of them. This is the worst of the laws. It has the health warning for Texas's telling these targeted speakers and their users that pornography is, among other things, contributing to prostitution, child exploitation, child pornography. You have a hostile regulator who's saying to adults, you should not be here. You have no consideration whatsoever of content filtering as the number one alternative that this Court had called out. You have age verification that just respectfully does not answer to the description that Texas's amici are offering, and that Mr. Nielsen is collapsing to today, which is age verification different from what the plain terms of the law would permit. And you have none of the protections that you would expect from a responsible regulator who's concerned about adults' interests here. You don't have enforceable rights for them. You do not have privacy protection. You do not have confidentiality of information. You do not have the government saying we cannot pry open this information and use it against you. All of that, your Honors, you should await a state or the federal government doing its work, showing its homework, having something other than the ill-tailored law that you have here and a blank legislative record that tells you nothing about why Texas would have arrived at a law that looks like this unless it was out to chill adults and chill speakers when it comes to expression that is clearly protected as to adults. And I want to offer the Ashcroft Law, if I may, as a point of comparison. We think that this is the a fortiori case, your Honors. The court was looking at federal legislation on a well-developed, comprehensive legislative record where you could see what Congress was doing and why it was doing it. And it was a serious, genuine effort to regulate Justice Kavanaugh, as we were discussing, to protect kids from all of the content that was deemed inappropriate for minors, regardless of its source. Texas's law is not fit for that purpose for reasons that have gone conceited, I think, effectively by Texas and by its amici. And you can find in a well-substantiated set of findings from the district court about how under-inclusive this law is. Your Honors have room, and I understand sympathy, for a state that is trying to do its job to regulate in this area conscientiously. And I want to assure you, Justice Barrett, when we talk about scrutiny that is strict in theory and fatal in fact, I was lucky enough to learn constitutional law from Jerry Gunther, that resonates. None of us is suggesting that in this context, strict scrutiny is fatal. It is not, it should not be. We conceded that there is a compelling interest here. The question will always be, has government tried to arrive at a less restrictive, has it tried to do this in a way that is not unduly burdening adults and is truly protecting kids? Once this law answers to strict scrutiny as it has long been understood, I do think, respectfully, this becomes an easy case. The last point, for Mr. Fletcher, and I agree with so much of what he says, he talked about tradition as a guidepost here, and I would just note the tradition that we have on the Internet. Yes, Justice Kagan, we have come a long way from when we were first talking about the Internet and how to explain what it was. But Reno and Ashcroft have been absolutely fundamental to how the Internet has developed as a free medium of expression, as our modern public square. And the tradition on the Internet is to say that it will be free and that it is incumbent upon parents to screen out content that is inappropriate for their kids. That, for the law, should stay. Thank you, counsel. The case is submitted.